IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELLE TACKETT,                          Case No. 6:12-cv-00959-MA

                    Plaintiff,             OPINION AND ORDER

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social
Security,

                    Defendant.

ROBYN M. REBERS
P.O. Box 3530
Wilsonville, OR 97070

        Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

JEFFREY R. McCLAIN
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Michelle Tackett seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, this court reverses and remands the decision of the Commissioner for further administrative proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 14, 2007, plaintiff protectively filed an application for a period of disability and disability insurance benefits. The claim was denied initially on February 20, 2008, and on reconsideration on June 20, 2008. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). Plaintiff appeared at a hearing on June 27, 2010, and was granted a continuance to obtain an attorney. The ALJ held another hearing on February 11, 2011, at which plaintiff appeared with her attorney and testified. An impartial medical expert, Arthur Lorber, M.D., and vocational expert, Mark McGowan, also appeared and testified. On March 25, 2011, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review on May 8, 2012. The ALJ's decision therefore became the final decision of the Commissioner for purposes of review.

Plaintiff was 51 years old at the time of the hearing, has a high school diploma, attended trade school, and is certified to work as a phlebotomist. Plaintiff alleges disability beginning March 10, 2010, as amended orally at the hearing, due to chronic obstructive pulmonary disease (COPD), and degenerative disc disease of the lumbar and cervical spine, which is exacerbated by her obesity. Plaintiff has past relevant work as a phlebotomist and resident care aid.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2012. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured. 42 U.S.C. § 416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her amended alleged onset of disability. See 20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*

At step two, the ALJ found that plaintiff had the following severe impairments: mild COPD, degenerative disk disease of the cervical and lumbar spine, and obesity. See 20 C.F.R. § 404.1520(c).

At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.

The ALJ assessed plaintiff with a residual functional capacity (RFC) with the following limitations: plaintiff can perform a range of light work, except due to chronic neck and back pain, she can perform tasks that involve no more than four hours of standing/walking, and about six hours of sitting in an eight-hour workday (with normal breaks); plaintiff must be permitted to change positions as necessary to relieve discomfort; plaintiff may occasionally stoop, kneel, crouch, or climb ramps or stairs; she must avoid balancing, crawling, or climbing ladders, ropes or scaffolds; due to plaintiff's combination of pain medication side effects and respiratory symptoms, she must avoid workplace hazards, such as unprotected heights or moving machinery, as well as excessive vibration and concentrated exposure to respiratory irritants; plaintiff's overhead reaching bilaterally is limited to

no greater than frequently to account for her subjective complaints and mild range of motion deficit.  See 20 C.F.R. §§ 404.1527, 404.1529.

At step four, the ALJ found plaintiff unable to perform any past relevant work.  See 20 C.F.R. § 404.1565.

At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that the claimant can perform.  See 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), 416.966.  Accordingly, the ALJ concluded that Plaintiff is not disabled under the meaning of the Act.

### ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ improperly assessed plaintiff's credibility; (2) the ALJ failed to give controlling weight to the opinion of Martin Johnson, M.D., her treating physician; (3) the ALJ erroneously permitted Arthur Lorber, a medical expert, to testify; and (4) the ALJ's RFC fails to account for all of plaintiff's limitations, including her obesity.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039.  "Substantial evidence means

more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.; Valentine, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Batson v. Comm'r of Soc. Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001); Batson, 359 F.3d at 1193.

## DISCUSSION

### I.  Plaintiff's Testimony

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must

6 – OPINION AND ORDER

provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Carmickle v. Comm'r Soc. Security Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); Lingenfelter, 504 F.3d at 1036.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Tommasetti, 533 F.3d at 1039; Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039.

In a November 2007 Function Report, plaintiff described that she suffers constant, chronic low back pain and pain in her right leg. Plaintiff stated that she can only lift five to eight pounds due to shortness of breath and fatigue. Plaintiff stated that she sometimes uses a cane or walker for support when ambulating. Plaintiff described that she has difficulty sleeping, and wakes every two hours due to back pain and discomfort. Plaintiff is able to make herself simple meals and assists in caring for her young grandson. Plaintiff is able to vacuum, dust, wash dishes by hand,

and sort laundry, but she must take breaks.  Plaintiff is able to drive for short distances, and shop for groceries, but needs assistance lifting and carrying grocery bags.  Plaintiff also described that her medications make her drowsy and feel sedated.

At the February 11, 2011 hearing, plaintiff described that she worked full time as a staff coordinator at a resident care facility for autistic children.  Plaintiff stated that she was terminated in March of 2010 after failing to timely report an incident where a child bit her, and she fell down some stairs.  Plaintiff testified that towards the end of her staff coordinator position, she was not working a full eight hours each day, but would leave an hour or two early, and make up that time later in the week.

Plaintiff testified that her biggest obstacle to returning to work is pain in her back and shoulders.  Plaintiff stated that she takes Percocet and Soma at night, and anti-inflammatories during the day, and that on a ten-point scale, with all her medications, she rates herself at a seven and a half to eight.

Plaintiff testified that she continues to smoke three to four cigarettes a day, and uses her inhalers three to four times per day.  Plaintiff testified that she could be on her feet for an hour, then would need to put her feet up.  Plaintiff stated that she could sit for 45 minutes.  Plaintiff testified that she can walk one to two blocks before needing a rest of 15 to 20 minutes.  Plaintiff described that on a good day, she can take her grandson

8 - OPINION AND ORDER

to the park or go grocery shopping.    Plaintiff stated that on a bad day, she needs to sit with ice or heat on her back.    Plaintiff testified that she has an equal number of good and bad days.

In the March 25, 2011 decision, the ALJ concluded that plaintiff has medically determinable impairments that could reasonably be expected to produce some symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible.

The ALJ provided several reasons for discounting plaintiff's testimony.  First, the ALJ found that plaintiff's testimony concerning her on-going job searches was inconsistent with the severity of her alleged disability.    At the hearing, plaintiff testified that she was actively seeking work as a phlebotomist and noted that hospital shifts are typically 12 hours in length.  When asked by her attorney whether she could perform an eight hour shift, plaintiff said she would try, but stated it would be difficult.  Plaintiff also testified that she could not respond to codes, or work for 40 hours a week.  In the decision, the ALJ determined that plaintiff's somewhat equivocal testimony indicated plaintiff is not as disabled as she alleges, and discredited her on that basis.

Plaintiff argues that the ALJ should not have discredited plaintiff for seeking work, even if it might prove unsuccessful. See 20 C.F.R. § 404.1574(a) & (c)(unsuccessful work attempts do not

9 - OPINION AND ORDER

count toward claimant's ability to perform substantial gainful activity). Having carefully reviewed plaintiff's hearing testimony, it is clear that plaintiff desires to return to work as a phlebotomist and is actively seeking such employment, and the ALJ's interpretation is supported by substantial evidence. Although plaintiff's has posed a reasonable interpretation of her testimony, I may not second-guess the ALJ's equally reasonable interpretation. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Second, the ALJ discredited plaintiff because she lost her job as a staff coordinator because she failed to file an incident report, not due to her impairments. The ALJ noted that plaintiff lost her job around the time of her amended onset of disability date. When a claimant stops working for reasons other than disability, it supports an adverse inference as to the credibility of her claim that she could not continue working due to disability. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001)(adverse credibility determination based claimant losing job due to lay off, not impairments).

While the ALJ did correctly find that plaintiff was terminated for reasons unrelated to her disability, there was conflicting evidence concerning plaintiff's ability to work a full eight-hour shift. Plaintiff testified that toward the end of her employment, she was fatigued, and left work an hour early most days. The ALJ

10 - OPINION AND ORDER

specifically noted this accommodation permitted plaintiff to work, despite her limitations.  On balance, I conclude that the ALJ's findings in this respect are not entirely supported by substantial evidence.

The ALJ's third reason for discrediting plaintiff is not supported by substantial evidence.  The ALJ discredited claimant for an alleged discrepancy in the record concerning two falls on the stairs which aggravated her back and shoulder pain.  At the hearing, the ALJ inquired about the two incidents, and was not satisfied with the documentation in plaintiff's medical records, suggesting that the falls were one in the same.  Plaintiff testified that first fall occurred in February of 2010, and involved plaintiff being bitten by an autistic child at the group facility, causing plaintiff to lose her balance and fall down a few stairs.  Plaintiff testified that the second fall occurred in August of 2010, and involved plaintiff being shoved down a few stairs by her then-boyfriend.  Plaintiff testified that the boyfriend was arrested for assault, and that she had a restraining order against the boyfriend.

A review of plaintiff's medical records substantiates that the falls were indeed two separate incidents, and that plaintiff reported increased pain in her back and leg which resolved with her regular regiment of Percocet and Soma.  Tr. 535, 555.  Accordingly,

I conclude that the ALJ's credibility finding on this basis is not supported by substantial evidence in the record.

Lastly, the ALJ discredited plaintiff for her failure to stop smoking, despite her allegations of debilitating COPD. The record demonstrates that plaintiff has been repeatedly advised by her treating physician to stop smoking, yet continues to smoke three or four cigarettes per day. However, the Ninth Circuit has suggested that smoking is an addiction, and that it may not be an appropriate basis upon which to discredit a claimant. See Bray v. Commissioner of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009)(discrediting claimant for failing to stop smoking despite COPD was harmless error). Therefore, I conclude the ALJ erred in discrediting plaintiff on this basis.

I disagree with the Commissioner that the ALJ's error in discrediting claimant for failing to quit smoking was harmless. In short, I have determined that several of the reasons the ALJ provided for discrediting plaintiff are not supported by substantial evidence. Because of these errors, I conclude that the remaining reason does not amount to a clear and convincing support for the adverse credibility determination. Accordingly, the ALJ's credibility finding cannot be sustained. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 884-85 (9th Cir. 2006).

////

////

## II.  **Physicians' Opinions**

Plaintiff argues that the ALJ erred in rejecting the opinion of Dr. Johnson in favor of the testifying medical expert, Dr. Lorber.  According to plaintiff, Dr. Johnson's opinion is entitled to controlling weight.  The ALJ gave "great weight" to the assessment of Dr. Lorber.

An ALJ may reject a treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007)(quoting Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)).  When the medical opinion of a treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  Lester v. Chater, 81 F.3d 821, 830-32 (9th Cir. 1995).

A nonexamining physician is one who neither examines nor treats the claimant.  Lester, 81 F.3d at 830.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Id. at 831.

### A.   Dr. Johnson

Dr. Johnson is a an internist with a specialty in pulmonary issues.  Dr. Johnson has been plaintiff's treating physician for

many years, and is responsible for coordinating plaintiff's care, including referrals for plaintiff's back surgery in 2007. Dr. Johnson prescribes all of plaintiff's medications.

On December 20, 2010, in response to questions posed by plaintiff's attorney, Dr. Johnson provided an opinion stating that plaintiff suffers from chronic pain and weakness in her right lower extremity due to sciatica/radiculopathy from her lumbar spinal degenerative disease, with preceding surgeries. Dr. Johnson noted that there are MRIs which show that plaintiff has nerve root impingement. Dr. Johnson also noted plaintiff's "significant" COPD, with dyspnea on exertion, recurrent cough, and occasional bronchospastic exacerbation. Dr. Johnson noted the severity of plaintiff's COPD is demonstrated by spirometry. Dr. Johnson additionally noted plaintiff's morbid obesity.

In his December 20 opinion, Dr. Johnson indicated that plaintiff's degenerative disc disease with chronic pain limits her ability to stand, walk, or sit for extended periods, and that she cannot stoop, crouch, crawl or use her legs in a physical manner for extended periods. Dr. Johnson indicated that plaintiff must avoid exposure to temperature extremes, dust, and fumes due to her COPD. Dr. Johnson further noted that plaintiff's endurance in all tasks is limited by her obesity. Lastly, Dr. Johnson opined that plaintiff would require frequent days of absence due to exacerbations of her conditions.

Dr. Johnson also completed a check-the-box form provided by plaintiff's attorney.    In that form, Dr. Johnson opined that plaintiff could sit for only one to two hours, could stand and walk for only two hours, and can lift only 10 pounds.  The ALJ indicated that if all of Dr. Johnson's limitations are credited, plaintiff would be precluded from full-time work.

The ALJ gave three reasons for giving Dr. Johnson's opinion less weight.  First, the ALJ noted that Dr. Johnson's opinion was not supported by his own treatment notes.  Second, the ALJ noted that Dr. Johnson's opinion was contradicted by other objective medical evidence, namely the opinion of examining physician Steven Truong, M.D.  Third, the ALJ noted that Dr. Johnson's opinion was contradicted by the opinion of Dr. Lorber.

The ALJ detailed inconsistencies between Dr. Johnson's opinion and the limitations he described in his treatment notes.  The ALJ noted that Dr. Johnson's notes consistently described plaintiff's COPD as mild, yet in his December 2010 opinion, he describes plaintiff's COPD as significant.  The ALJ noted that Dr. Johnson's spirometry testing in July 2010 indicated that plaintiff was back to baseline after a recent exacerbation, and that her FEV1 was within normal limits.  Tr. 555-56.  The ALJ's findings are supported by substantial evidence in the record.  Thus, the ALJ's conclusion that Dr. Johnson's characterization of plaintiff's COPD as significant is contrary to his treatment notes is a reasonable

one, and the ALJ could discount Dr. Johnson's opinion on this basis.

The ALJ also correctly noted that contrary to Dr. Johnson's December 2010 opinion, plaintiff's lumbar spine MRIs show no evidence of nerve root impingement. Other inconsistencies between Dr. Johnson's opinion and his treatment notes are evident. For example, a November 6, 2009 treatment note reflects that plaintiff "states her back pain overall is better and she is more active without significant functional disability." Tr. 537. Additionally, a July 31, 2009 treatment note indicates that plaintiff's back pain was better, and that she was "much more ambulatory" working as a staff coordinator, and that she "recently came back from summer camp with lots of hiking and was able to keep up fairly well." Tr. 538. These 2009 notes are inconsistent with Dr. Johnson's opinion concerning plaintiff's diminished functional capacity and endurance. Therefore, I conclude that the ALJ's determination that Dr. Johnson's opinion was inconsistent with his treatment notes is supported by substantial evidence in the record.

**B.  Dr. Truong**

The ALJ also gave Dr. Johnson's opinion less weight because it was contradicted by the opinion of Steve Truong, M.D., whose opinion was consistent with a subset of light work. Dr. Truong performed a disability occupational evaluation on April 5, 2010, and reviewed plaintiff's medical records, which indicated a

significant history of degenerative disc disease.    Dr. Truong
discussed that plaintiff's primary medical issue affecting her
functional capacity is her severe degenerative disc disease, for
which plaintiff has undergone several surgeries.    Tr. 522.    Dr.
Truong discussed that plaintiff suffers from COPD, and is morbidly
obese and that plaintiff is fairly deconditioned.    Dr. Truong noted
that plaintiff has decreased air movement in both lungs.

The ALJ thoroughly discussed Dr. Truong's evaluation.    The ALJ
discussed Dr. Truong's findings that plaintiff exhibited mild
tenderness in the mid sacral spine and some tenderness in the left
and right perivertebral lumbar muscles.    The ALJ noted that Dr.
Truong's findings indicated that plaintiff had full motor strength
in all extremities except the lower right, which was "a bit
suboptimal secondary to some guarding."

The ALJ discussed that based on the examination of plaintiff,
and review of her records, Dr. Truong opined that plaintiff could
lift and carry five to 10 pounds frequently, and should not lift
more than 15 pounds.    Dr. Truong opined that plaintiff could sit
uninterrupted for two hours, could stand and walk for 45 minutes to
one hour.    Dr. Troung determined plaintiff could sit for six hours
in an eight hour day with normal rest breaks, and could stand for
three hours and walk for three hours with rest breaks.    The ALJ
noted that Dr. Truong found some postural limitations, as well as
recommending avoiding environmental hazards due to plaintiff's

COPD.  Dr. Truong found that plaintiff could ambulate without an
assistive device.   The ALJ gave Dr. Truong's opinion some weight,
finding they were consistent with the medical evidence as whole.
However, the ALJ determined that Dr. Truong's limitations to
handle, finger and feel were not supported by other evidence in the
record, and were inconsistent with the opinion of Dr. Lorber, and
thus did not credit that portion of his opinion.

The ALJ's summary of Dr. Truong's opinion is supported by
substantial evidence in the record.  Thus, Dr. Johnson's opinion is
contradicted by other substantial evidence in the record, and
therefore, the ALJ could appropriately give Dr. Johnson's opinion
less than controlling weight.   See Orn, 495 F.3d at 631.
Additionally, based Dr. Truong's conflicting opinion, in
combination with the multiple inconsistencies between Dr. Johnson's
treatment notes and his opinion, I conclude that the ALJ cited
specific and legitimate reasons for discounting Dr. Johnson's
opinion. Tommasetti, 533 F.3d at 1041.

### C.   Dr. Lorber

The ALJ also gave Dr. Johnson's opinion less weight by relying
on the testimony Dr. Lorber.   Plaintiff makes several arguments
with respect to Dr. Lorber: (1) the ALJ erred in permitting Dr.
Lorber to testify telephonically without advance notice to
plaintiff; (2) the ALJ erred in permitting Dr. Lorber to testify
without verifying whether Dr. Lorber had all relevant record

materials; and (3) the ALJ erred in crediting Dr. Lorber's opinion over that of Dr. Johnson.    The ALJ's reliance on Dr. Lorber's opinion is problematic.

### 1.    telephonic testimony

Plaintiff submits that under the regulations, medical experts must testify in person or by video teleconference only, citing 20 C.F.R. § 404.938(b).  Plaintiff submits that she was not informed in advance of the hearing that Dr. Lorber would be testifying telephonically, as opposed to appearing in person or via video-conference.  Plaintiff argues that by permitting Dr. Lorber to testify, the ALJ has committed harmful legal error.

The Commissioner responds that plaintiff has waived this argument because plaintiff's counsel did not object to Dr. Lorber's testifying telephonically at the hearing, nor to the lack of notice concerning telephonic appearance at the hearing.[1]    Plaintiff contends that even if this argument is waived, I should review it because it is question purely of law.  Because I have determined that remand is necessary on other grounds, I decline to specifically address this issue, except to state 20 C.F.R. § 404.938(b) suggests that the hearing notice will include whether an

---

[1] I note that plaintiff's counsel objected to Dr. Lorber's testimony on the basis that Dr. Lorber is not on the list of medical experts who is maintained on the regional office's roster, citing HALLEX I-2-5-36, and to a line of questioning by Dr. Lorber of plaintiff that counsel believed was irrelevant. The ALJ overruled these objections.

appearance of a "witness is scheduled to be made by video teleconferencing rather than in person."

### 2.    complete record

Plaintiff also complains that the ALJ did not adequately resolve plaintiff's counsel's concerns about whether Dr. Lorber had all of the relevant medical records. At the hearing, plaintiff's counsel inquired whether Dr. Lorber had plaintiff's most recent medical records. Dr. Lorber did not have Exhibit 23F, a cervical spine MRI dated November 23, 2010. The ALJ then proceeded to read Exhibit 23F to Dr. Lorber over the telephone. After Dr. Lorber completed his testimony and was excused, it was learned that Dr. Lorber also did not have Exhibit 24F, which contained a treatment note from Dr. Johnson dated August 26, 2010. In the decision, the ALJ determined that Exhibit 24F was not different in kind from other treatment notes from Dr. Johnson, and thus would not have impacted Dr. Lorber's testimony. Plaintiff also submits that during the hearing that there were multiple instances of difficulty with the audio connection with Dr. Lorber, and that the ALJ erred in relying upon Dr. Lorber's testimony. I agree.

I am not satisfied with the ALJ's resolution of Dr. Lorber's opinion. The ALJ clearly premised his rejection of Dr. Johnson's opinion on the testimony as provided by Dr. Lorber. I am not convinced as to the completeness of the information provided to Dr. Lorber. Having carefully reviewed the hearing transcript, it is

clear that Dr. Lorber did not have all of the exhibited copies of plaintiff's recent medical records, and as plaintiff correctly indicates, there were multiple instances where Dr. Lorber had difficulty hearing due to an inadequate audio connection. Therefore, I conclude that the ALJ's reliance upon Dr. Lorber's opinion was erroneous.  Because I have identified other errors in the ALJ's analysis, I rejected the commissioner's suggestion that reliance on Dr. Lorber's testimony was harmless error.

In the decision, the ALJ rejected part of Dr. Truong's opinion based on the limitations described by Dr. Lorber:

> The undersigned gives some weight to Dr. Truong's findings and assessment, which are generally consistent with the record as a whole, but not to all of his limits because the record as a whole supports the found limits. Specifically, as addressed by Dr. Lorber, the evidence does not support Dr. Truong's found limits in handle, finger and feel.

Tr. 27.

Because the ALJ relied upon Dr. Lorber's opinion to reconcile the conflicting evidence provided by Dr. Truong, the ALJ's evaluation of the medical evidence is problematic with respect to any alleged limitations plaintiff's hands. See Carmickle, 533 F.3d at 1164 (ALJ is responsible for resolving conflicts in the medical record).  Thus, without Dr. Lorber's opinion, the court cannot resolve those specific limitations.  Thus, I conclude that, on this

21 - OPINION AND ORDER

record, the ALJ erred in evaluating the medical opinions with respect to plaintiff's functional limitations.

## III. RFC Assessment and VE Testimony.

I have concluded that the ALJ erred in evaluating plaintiff's credibility, and has not reconciled medical evidence concerning any alleged handling, fingering and feeling limitations which could impact the ALJ's assessment of plaintiff's RFC. Because those determinations were flawed, the hypothetical posed to the vocational expert was legally inadequate. Therefore, the ALJ's Step Four and Step Five findings are not supported by substantial evidence. Robbins, 466 F.3d at 886. I decline to address any additional specific arguments raised by plaintiff.

## IV. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court and generally turns on the likely utility of further proceedings. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). See also Brewes v. Comm'r Soc. Sec. Admin., 682 F.3d 1157, 1164 (9th Cir. 2012).

The Ninth Circuit has established a three-part test for determining when evidence should be credited and benefits immediately awarded. Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011). The court should grant an immediate award of benefits when:

22 - OPINION AND ORDER

(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Id. The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

On this record, I conclude that further proceedings are necessary. I have determined that the ALJ failed to provide clear and convincing reasons for discrediting plaintiff's subjective complaints about the limiting effect of her impairments. I also have determined that the ALJ provided specific and legitimate reasons for crediting the opinion of Dr. Truong, who opined that plaintiff could perform a subset of light work, which would preclude a finding of disability. The ALJ also erroneously relied upon the testimony of Dr. Lorber. As noted above, however, there are conflicts in the medical evidence concerning plaintiff's alleged functional limitations, especially with respect to any alleged limitations with handling, fingering, and feeling.

Thus, based on the foregoing, I conclude that a remand for further proceedings is required to permit the ALJ: (1) to reconsider plaintiff's credibility, (2) to reconsider the evaluation of the medical evidence and resolve any conflicts as

necessary, and (3) to reconsider whether any new findings with respect to plaintiff's credibility and the medical evidence affect plaintiff's RFC, and/or the remaining steps in the sequential evaluation.

<b><u>CONCLUSION</u></b>

The decision of the Commissioner is REVERSED. This action is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

DATED this _14_ day of MAY, 2013.

Malcolm F. Marsh
United States District Judge